**Frank Taiping CHIN, et al., Appellants,**

v.

**Robert L. ZOET, et al., H.T. Ferguson, et al., Ferris O. Grosky, Personal Representative of the Estate of Mary B. Balkenhol, Respondents.**

No. C2–87–1268.

Court of Appeals of Minnesota.

Jan. 26, 1988.

C.A. Johnson, II, Johnson & Moonan Law Firm, Mankato, for Frank Taiping Chin, et al., appellants.

Norbert P. Smith, Walker & Smith, P.A., Mankato, for Robert L. Zoet, et al., respondents.

John M. Riedy, McLean, Peterson Law Firm, Chtd., Mankato, for H.T. Ferguson, et al., respondents.

Scott V. Kelly, Farrish, Johnson & Maschka, Mankato, for Ferris O. Grosky, Personal Representative of the Estate of Mary B. Balkenhol, respondent.

Heard, considered and decided by PARKER, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Appellants Frank Taiping Chin and Yen Yen Chin sued for rescission of their contract for deed with respondents Robert L. Zoet and Julie A. Zoet, and for return of all monies paid on the grounds the respondents failed to tender marketable title by the time prescribed in their contract for deed and that a reasonable time expired before respondents perfected title.[1] The

---

1. The several named respondents involved in this case are persons whose interests in the property arose out of a series of transactions which occurred before appellants became involved with the property. To clarify the record, the various contract interests in the property are as follows. Before and at the time of her death on June 13, 1986, Mary B. Balkenhol was the fee owner of the property. On January 27, 1977, Balkenhol entered into a contract for deed

trial court granted summary judgment for respondents and denied appellant's motion to vacate the summary judgment and for amended findings of fact and conclusions of law or for a new trial. We reverse and remand.

## FACTS

On October 30, 1981, appellants entered into a contract for deed with respondents for the sale of a lot and apartment building located in Mankato, Minnesota.

Appellants agreed to a purchase price of $138,000, consisting of a $30,000 downpayment, assumption of a balloon payment of $99,545.93, and payment of principal in the amount to $8,454.07. Respondents agreed, among other things, to convey to appellants marketable title to the real estate by warranty deed, free and clear of all encumbrances. The contract specified that performance was due on January 1, 1986 and, by its express terms, made time of the essence.

Appellants paid a total of $80,951.12 pursuant to the contract, but did not pay the balloon payment which they assumed in their agreement. Before January 1, 1986, and in anticipation of making the balloon payment, appellants applied for a loan at the National Bank of Commerce in Mankato. The bank notified appellants on November 12, 1985, that financing was approved on the condition there was good title to the property and the bank could obtain title insurance to its satisfaction.

The time for performance came and went without either party's objection. The abstract was delivered to the bank, title was examined and a survey conducted. The survey was completed on February 3, 1986 and revealed the apartment building was situated four feet within a right-of-way reserved by the City of Mankato for the adjoining Fifth Street. The attorney examining title for the bank would not issue a lender's title insurance policy without making an exception for this encroachment defect in title. The National Bank of Commerce refused to accept title insurance with that exception and none was issued.

On February 3, 1986, the bank's attorney wrote to the attorney representing the Balkenhol estate advising him appellants' loan would not be approved until a permanent license or vacation of the four-foot right-of-way was obtained from the city. Respondents obtained a license agreement from the city council on June 12, 1986. Under the terms of this license, the city had the right to terminate the license at its option and any buildings on the property would be removed at the licensee's expense within 180 days after the city's notice. The bank's attorney objected to the license agreement. Respondents then proceeded the next day to obtain a vacation from the city.

Appellants retained an attorney in early August 1986, who sent a letter to respondents on August 5, 1986, in which he objected to the terminable license as a defect in marketable title and rescinded the parties' contract. On September 22, 1986, the city council held a hearing concerning respondent's petition to vacate the four-foot right-of-way. Counsel for appellants appeared and advised the council that he represented appellants, that they had rescinded the contract for deed with respondents, and that he was concerned vacation in this instance would set an undesirable precedent in Mankato. The city denied respondents' petition.

In October 1986, appellants filed their suit for rescission of the contract and for return of money they had paid together with accrued interest. Respondents proceeded with their attempts to cure the title defect and resubmitted a petition for vacation to the city planning commission in January 1987. The vacation was approved by the city council and filed on February 27, 1987. Respondents moved for summa-

with Anthony B. Mitchell. On November 28, 1979, Mitchell and his wife, Valerie A. Mitchell, entered into a contract for deed with Robert L. and Julie A. Zoet. On October 30, 1981, the Zoets entered into a contract for deed with

Frank Taiping Chin and Yen Yen Chin. Later, on April 16, 1982, the Mitchells assigned their vendors' interest in the Mitchell/Zoet contract for deed to H.T. Ferguson.

194

ry judgment of appellant's suit for rescission, which the trial court granted.

In the order denying appellants' motion to vacate summary judgment and for amended findings of fact and conclusions of law or for a new trial, the trial court stated:

> [Appellants] seek to rescind the contract effective immediately upon their election to do so in their August, 1986 letter after waiving timely performance for about eight months. This they cannot do. [Respondents] are allowed a reasonable opportunity and time to perform once [appellants] demand performance. The record does not show a demand for performance by [appellants].

## ISSUES

1. Did the trial court err in denying rescission because appellants did not demand performance and allow respondents a reasonable time to perfect title?

2. Did the trial court err in determining as a matter of law appellants waived their right to require strict performance by respondents and, therefore, their right to rescind the contract?

3. Did the trial court err in determining as a matter of law appellants are estopped from rescinding the contract?

4. Did the trial court err by denying respondents' motion for an award of attorney fees?

## ANALYSIS

Upon review of a grant of summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The materiality of a disputed fact is determined by looking to the substantive law of the case. An issue of fact is material if its resolution will affect the outcome of a case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976).

1. Appellants contend they had an absolute right to rescind the contract and re-

spondents were not entitled to a reasonable time in which to cure the title defect after January 1, 1986. Respondents argue since appellants waived strict performance of the contract on January 1, 1986, they could not rescind without first tendering full payment and demanding performance by respondents.

Each party is partially correct. Appellants did have a right to rescind, but it was not absolute and could be waived. If appellants waived their right to rescind, respondents are entitled to a reasonable time in which to perfect their title, and appellants must demand performance before rescinding the contract. However, respondents incorrectly argue appellants must tender full payment in order to demand marketable title from respondents.

The law is clearly stated in *Trainer v. Lammers*, 161 Minn. 336, 201 N.W. 540 (1925):

> Where the time for performance is fixed and definite, the vendor is not entitled to additional time in which to perfect his title, yet even in that case he is entitled to a reasonable time after demand in which to execute the deed.
> * * *
>
> *    *    *    *    *    *
>
> But where the time of performance is uncertain and indefinite neither party is required to keep himself in constant readiness to perform. Each is entitled to a reasonable opportunity to perform after the time for performance becomes fixed and definite. If one party has the right to fix the time for performance, the other is entitled to a reasonable time after notice of the time so fixed. * * *

The most common cases in which this principle is applied are those in which the contract specifies the time of performance, but the right to insist upon performance at the time specified has been waived. After waiving this right one party cannot terminate the contract for the failure of the other party to perform until he has demanded performance and given the other party a reasonable time

and opportunity to comply with the demand.

*Id.* at 342–43, 201 N.W. at 542–43 (citations omitted).

The trial court did not err in finding respondents are allowed a reasonable time and opportunity to perform once appellants demand performance *if* appellants waived timely performance.

2. In ruling on appellants' motion to vacate summary judgment, the court concluded as a matter of law appellants waived performance on January 1, 1986 and, thus, waived their right to rescind the contract.

█ To establish waiver, it must be shown that the waiving party had full knowledge of the facts, had full knowledge of his legal rights, and intended to relinquish these rights. *Freitag v. Wolf,* 303 Minn. 139, 142, 226 N.W.2d 868, 870 (Minn. 1975). Waiver is ordinarily a question of fact for the jury. When only one inference can be drawn from the facts, the question becomes one of law. However, where different inferences may be drawn, the question is one of fact for the jury. *Engstrom v. Farmers & Bankers Life Insurance Co.,* 230 Minn. 308, 312, 41 N.W.2d 422, 424 (1950). Evidence of both intent to waive and knowledge of the right to waive is required to find waiver as a matter of law. *Id.* at 312, 41 N.W.2d at 424.

Here, the evidence shows both parties knew the date set for performance in the contract. Neither party performed on the date set and neither party objected to the other's nonperformance on that date. The title defect was revealed by the land survey on February 3, 1986. However, appellants did not receive a copy of the February 3, 1987 letter the bank's attorney sent to the Balkenhol estate in which the attorney advised of the title defect and directed the estate to correct it by obtaining a permanent license or vacation from the city.

Appellants contend they were not represented by counsel until early August, two days prior to their August 5, 1986 letter of rescission, and they did not understand their right to rescind the contract until that time. Furthermore, appellants contend they were not advised of nor did they approve of any actions taken by respondents to correct the title defect prior to August 1986.

█ The trial court found the bank's attorney was acting as much for appellants as he was for the bank. Thus the court, in effect, imputed the bank's attorney's knowledge of the defect to appellants and concluded appellants knew of their right to rescind after the defect was discovered on February 3, 1986, and thus by waiting several months before attempting to rescind, appellants waived their right to rescind.

█ The trial court's imputing of knowledge to appellants of the right to demand performance and to rescind the contract was error. There is no evidence in the record which supports the finding that the bank's attorney was acting on behalf of appellants. In fact, the bank's attorney submitted an affidavit in support of appellants' motion to vacate summary judgment or amend the findings or grant a new trial which stated no direct attorney-client relationship existed between himself and appellants and that he represented the bank for purposes of lender's title insurance as opposed to representing appellants for purposes of buyer's title insurance.[2] Findings of fact which are controlled or influenced

---

**2.** Appellants submitted their affidavit and an affidavit from the bank's attorney in support of appellants' motion to vacate summary judgment, etc. However, the trial court refused to consider the affidavits because it concluded it could not consider new evidence in making its decision. The trial court erred. While it is true that a trial court may not consider new evidence in considering a motion for amended findings, *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 238, 219 N.W.2d 641, 651 (1974), since appellants also moved for a new trial, the court was permitted to consider these affidavits. Minn.R.Civ. P. 59.01 states:

On a motion for a new trial * * * the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions and direct entry of new judgment.

Furthermore, the pertinent facts that would not be a part of the trial court's minutes may be shown by affidavit. *See* Minn.R.Civ.P. 59.02.

by errors of law are not final on appeal and will be set aside. *In re Trust Under the Will of Holden*, 207 Minn. 211, 227, 291 N.W. 104, 112 (1940).

A material issue of fact exists as to whether appellants waived their right to demand performance on January 1, 1986, and thus their right to rescind the contract. The trial court erred in granting summary judgment.

3. Because we find the trial court erred in granting summary judgment, we do not reach the issue of whether appellants are estopped from raising the title objection as a basis for rescission of the contract.

4. Respondents request review of the trial court's denial of their requests for an award of attorney fees. Minn.Stat. § 549.21 subd. 2 (1986) permits a court in its discretion to award a party reasonable attorney fees if the party or attorney to be charged acted in bad faith, asserted a claim that was frivolous and costly to the other party or asserted an unfounded position soley to delay the proceedings or to harass. *Id.*

■ Respondents twice requested attorney fees in this matter, contending appellants' counsel appeared at the city council meetings in bad faith and attempted to delay their actions in curing their unmarketable title. Both times the trial court ruled no party was entitled to an award of attorney fees on the grounds there was a bone fide dispute between the parties, the parties acted in good faith, and the case presented genuine issues of law.

There was a genuine dispute concerning the legal effect of appellants' attempted rescission of the contract so that it cannot be said these actions were taken solely to delay or harass or that they are frivolous. Furthermore, there is no evidence of bad faith here. Appellants' counsel appeared at the city council meeting after he believed the parties' contract was rescinded, and he openly told the council who he represented and what his concerns were. Therefore, the trial court did not abuse its discretion in refusing respondents' requests for attorney fees.

## DECISION

Because the trial court erred in granting summary judgment, we reverse and remand for trial.

Reversed and remanded.