HAR–NED LUMBER CO., Respondent,

v.

AMAGINEERS, INC., et al., Defendants,

David Gepner, Appellant.

No. C6–88–1641.

Court of Appeals of Minnesota.

March 14, 1989.

Mark J. Johnson, Lang, Pauly & Gregerson, Ltd., Minneapolis, for respondent.

James K. Sander, Ann Morelli Spencer, Wagner, Johnston & Falconer, Ltd., Minneapolis, for appellant.

Heard, considered and decided by NORTON, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NORTON, Judge.

The trial court determined that service of a mechanics' lien statement by certified mail pursuant to Minn.Stat. § 514.08, subd. 1(2) (Supp.1983) was accomplished upon the owner of the improved property. We affirm.

## FACTS

David Gepner (Gepner) appeals the trial court's conclusion that Har–Ned Lumber Company (Har–Ned) is entitled to foreclose a mechanics' lien upon Gepner's improved property. The facts are not at issue on appeal. Gepner owns a house in Hennepin County and has resided there with his wife and family for the last ten years. In 1983, Gepner contracted with Amagineers, Inc. to construct over $30,000 of improvements to his house. Amagineers, Inc. made arrangements with Har–Ned to furnish the required building materials.

Har–Ned began furnishing materials for the Gepner improvements on January 13, 1984, and within 10 days it served Gepner with a pre-lien notice pursuant to Minn. Stat. § 514.011, subd. 2 (Supp.1983). The pre-lien notice informed Gepner that Har–Ned may enforce a lien upon the improved land if Har–Ned was not paid for materials.

Har–Ned finished providing materials for the Gepner improvements on February 21, 1984, and billed Amagineers, Inc. $12,-062.98. To date, Har–Ned has not been paid.

Har–Ned hired the law firm of Lang, Pauley, and Gregerson to validate and foreclose its mechanics' lien on Gepner's property. The firm directed law clerk Lea De-Sousa (DeSousa) to prepare a mechanics' lien statement to be recorded against the improved property. DeSousa prepared the mechanics' lien statement (lien statement), completed the affidavit of service by certified mail located on the reverse side of the form, and dated it June 20, 1984. After a Har–Ned signatory executed the lien statement and DeSousa made copies of the exe-

cuted statement, DeSousa recorded the original lien statement with the Hennepin County Recorder's Office on June 20, 1984. DeSousa then promptly deposited an envelope containing a service letter addressed to Gepner and a copy of Har–Ned's executed lien statement into a United States Postal Service (postal service) mailbox. The envelope was properly addressed to Gepner, properly posted for certified mail, and properly affixed with a receipt requesting a record of delivery of the certified mail. The enclosed service letter stated that the enclosed lien statement was being filed against the Gepner property. The lien statement gave notice of Har–Ned's intent to claim and hold a lien upon the improved property.

In conjunction with the preparation and mailing of the lien statement to Gepner, the Lang firm recorded the certified mailing on the postal service's Form 3800 receipt. The form documented that certified mail was addressed to Gepner at his home address. The receipt was then stapled to the service letter and placed in the firm's Har–Ned client file.

Har–Ned commenced its action to foreclose its mechanics' lien on February 14, 1985. At trial, DeSousa testified that the Lang firm never received from the postal service its receipt of completed delivery of the certified mail to Gepner. After the firm requested that a trace be made for the certified mail, postal authorities notified the Lang firm on August 20, 1984, that it was unable to locate the certified mail and Gepner had failed to reply to their inquiries.

Gepner testified that he received timely pre-lien notice by certified mail advising him of the lien and of his right to withhold money in order to make sure the lien was paid. However, he testified that he never received the lien statement by certified mail. He claimed that he did not receive notice of the foreclosure until he received a telephone call and follow-up letter from DeSousa, even though he was generally aware of the problems between Amagineers, Inc. and Har–Ned.

By amended order for judgment entered July 14, 1988, the trial court determined that Har–Ned's attorney properly prepared a mechanics' lien statement pursuant to Minn.Stat. § 514.08, subd. 2 (1982), and that the lien statement was timely filed with the Hennepin County Recorder within 120 days from the last date Har–Ned furnished materials to the property pursuant to Minn.Stat. § 514.08, subd. 1(1) (Supp. 1983). The court also determined that service pursuant to Minn.Stat. § 514.08, subd. 1(2) (Supp.1983) was accomplished when Har–Ned's attorneys placed the certified mail envelope containing a copy of the mechanics' lien statement into a postal service mailbox within 120 days from the last date Har–Ned furnished materials to the property. The court concluded that Har–Ned is entitled to a lien on the improved property and to foreclose its lien in the amount of $11,816.98 plus interest, costs and disbursements, as well as attorney fees in the amount of $3,556.25.

## ISSUES

1. Did the mailing constitute certified mail, where the date of mailing was not recorded on the face of the sender's own receipt?

2. Did the trial court err in determining that service by certified mail, pursuant to Minn.Stat. § 514.08, subd. 1(2) (Supp.1983), was accomplished when respondent deposited the certified mail envelope containing a copy of the mechanics' lien statement into a United States Postal Service mailbox within 120 days from the date materials were last furnished?

## ANALYSIS

### Standard of Review

The amended judgment appealed from was entered pursuant to the trial court's findings and conclusions. "The findings of a trial court sitting without a jury will not be set aside unless they are clearly erroneous." *Wellens v. Thuening*, 393 N.W.2d 302, 304 (Minn.Ct.App.1986). The burden is on appellant to show that there is no substantial evidence reasonably tending to sustain the trial court's findings. *Id.* In

reviewing questions of law, however, this court is not required to defer to the trial court's findings. *Huynh v. Illinois Farmers Insurance Co.*, 421 N.W.2d 390, 391 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. May 18, 1988). In fact, any findings of fact influenced by errors of law will be set aside. *Chin v. Zoet*, 418 N.W.2d 191, 195–196 (Minn.Ct.App.1988).

## I.

■ Gepner contends that Har–Ned failed to comply with the minimum requisites of certified mail. He maintains that Har–Ned's failure to physically record the date of mailing *on* the sender's Form 3800 receipt violates postal regulations and renders the service insufficient.

Prior to trial, counsel for the parties stipulated that "the sole issue for the [c]ourt's determination is whether [Har–Ned] * * * *served* the lien statement" (emphasis added). The court was not asked to determine whether the requisites of certified mail had been satisfied.

Minn.Stat. § 514.08, subd. 1(2) (Supp. 1983) does not specify the requisites for certified mail. Appellant substantially complied with applicable postal service regulations. On appeal, the parties have submitted excerpts from the U.S. Postal Service's *Domestic Mail Manual*. The *Manual* requires the sender to "mark" the sender's certified mail Form 3800 receipt to show the date of mailing. 24 *Domestic Mail Manual*, § 912.44. (This receipt is simply retained by the sender and is not filed with the postal authorities.)

The sender here, stapled a copy of the dated service letter to the receipt. We hold that this act sufficiently complied with the marking requirements of section 912.44. *See Black's Law Dictionary*, 874 (5th Ed. 1979) (definition of "mark" encompasses the signing, writing or putting of a ticket *upon* an item to distinguish the item from others).

## II.

Gepner also alleges the trial court erred in determining that service of the mechanics' lien statement was accomplished within the statutory time period by Har–Ned's *deposit* of the certified mail envelope containing a copy of the lien statement into a postal service mailbox. Gepner contends that service by certified mail is only complete upon *receipt* by the addressee. Therefore, he argues, because he did not "receive" the certified mail, service upon him was never accomplished and Har–Ned's lien automatically ceased.

Mechanics' liens are created by statute "to protect those who furnish material or services for the improvements of another's property." *Enviro–Fab, Inc. v. Blandin Paper Co.*, 349 N.W.2d 842, 846 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984) (citation omitted). Mechanics' liens "attach and take effect from the time the first item of material or labor is furnished." Minn.Stat. § 514.05 (1982). However, as a prerequisite to the validity of a lien, the person who furnishes labor or materials for the improvement of real estate must, within 45 days from the last date claimant furnished materials, give the owner by personal delivery or by certified mail, written notice that it may enforce a lien upon the improved land if not paid for the contributions. Minn.Stat. § 514.011, subd. 2 (Supp.1983). An attached lien ceases 120 days after furnishing the last item of material, unless within this period, a statement of the claim is filed with the county recorder of the county in which the improved land is located *and* a copy of the statement is served personally or by certified mail on the owner. Minn.Stat. § 514.08, subd. 1 (Supp.1983).

■ It is established law that mechanics' lien laws are strictly construed to determine whether a lien has attached, but are liberally construed once the lien has attached. *Cox v. First National Bank of Aitkin*, 415 N.W.2d 385, 387 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. January 20, 1988).

Gepner does not contest the trial court's finding that the lien statement was timely filed with the county recorder's office. Thus, the only issue is whether Gepner was timely served by certified mail.

Generally, service is complete when the paper is properly mailed. *Hoff v. Northwestern Elevator Co.*, 120 Minn. 224, 226, 139 N.W. 153, 154 (1913). "[T]he risk of failure of the mail is on the person to whom it is addressed." *Id.* "Certified mail is a service that provides a mailing receipt to the sender and a record of delivery at the office of address." 39 C.F.R. 3001, App. A, subd. 5.010 (1987). The use of "certified mail fills the function of insuring receipt by a person of suitable age or discretion at the person's last known address and is thus reasonably calculated to provide notice to the affected person." *Goldsworthy v. State, Department of Public Safety*, 268 N.W.2d 46, 49 (Minn.1978). While service by certified mail raises a presumption of actual notice, such notice may be found where the certified mailing is properly directed to the intended recipient, even though not actually received by them. *Id.* "Due process requires only that notice be reasonably calculated to reach interested parties." *Id.* at 48.

In *McIntee v. State, Department of Public Safety*, 279 N.W.2d 817 (Minn.1979), the state had sent notice by certified mail of its intent to revoke McIntee's license. The notice was sent to the address where McIntee had resided for the past five years, which was listed on his license. The postal service left a notice of receipt of certified mail in McIntee's post box along with a request that he pick up the certified mail. McIntee never responded to the notice, and the mail was ultimately returned to the sender marked "unclaimed." *Id.* McIntee alleged that he never "received" the notice that was required by statute before the state could revoke his driver's license. *See* Minn.Stat. § 169.123, subd. 5 (1976). The supreme court held that the post office properly delivered notice of the certified mail to McIntee's post box, and McIntee received "constructive delivery," despite his refusal or neglect to pick up the certified mail. *McIntee*, 279 N.W.2d at 820. Consequently, the court found that McIn-

tee was given "sufficient notice" of the proposed revocation. *Id.*

Like the State in *McIntee*, Har–Ned sent a copy of its lien statement by certified mail to the residence where Gepner had resided for the past 10 years (and where Har–Ned had furnished the building materials). As in *McIntee*, through no fault of the sender the certified mail was not "received" by Gepner. Unlike *McIntee*, the record does not establish whether the postal service "properly delivered" notice to any individual at Gepner's address.[1]

Gepner either refused or neglected to assist the postal service in tracing the missing certified mail. McIntee ignored or neglected notices regarding the certified mail. McIntee's conduct was a factor in the supreme court's determination that he had received "constructive delivery" of the certified mail. *Id.* Similarly, we conclude that Gepner's conduct, coupled with his *actual* notice of Har–Ned's intent to claim and hold a lien upon his property is "sufficient notice" to satisfy the service requirements pursuant to Minn.Stat. § 514.08, subd. 1(2). *See Goldsworthy*, 268 N.W.2d at 49–50 (where evidence indicated party actually knew his license was revoked, non-receipt of mailed revocation notice did not require reinstatement). Gepner received the pre-lien notice served upon him in January 1984 by certified mail and was aware of problems between Amagineers, Inc. and Har–Ned. He received DeSousa's July 6, 1984 letter regarding the lien, had a telephone conversation with DeSousa on August 8, 1984, and received DeSousa's August 9, 1984 letter with copies of her June 19 and July 6, 1984 correspondence and a copy of the mechanics' lien statement.

In light of the liberal construction to be afforded to mechanics' liens after attachment, we hold that under these circumstances Gepner was timely served by certified mail.

### DECISION

The trial court's finding that a copy of Har–Ned's lien statement was timely

---

**1.** The record reflects that Har–Ned's pre-lien notice, which was also served by certified mail, was "received" by a neighbor who was attending Gepner's children when the postal service delivered the mail.

served by certified mail upon Gepner is not clearly erroneous. Accordingly, Har–Ned's mechanics' lien did not cease after attachment and the trial court properly held the lien may be foreclosed.

AFFIRMED.

HUSPENI, Judge (concurring in part and dissenting in part).

I respectfully dissent from that portion of the majority's decision that holds that the circumstances of this case satisfy the requirements of service by certified mail pursuant to Minn.Stat. § 514.08, subd. 1(2) (Supp.1983).

Minn.Stat. § 514.08, subd. 1 provides that the mechanics' lien ceases 120 days after furnishing the last item of material, unless *within this period:*

(1) a statement of the claim is filed for record with the county recorder of the county in which the improved premises are situated * * *; and

(2) a copy of *the statement is served personally or by certified mail* on the owner or his authorized agent[.]

*Id.* (emphasis added).

I submit that the fact that service under section 514.08, subd. 1(2) may be accomplished either by personal service or by certified mail is important and distinguishes this case from those in which the appropriate method of service was by regular mail. If the legislature had intended that service under this statute be accomplished upon depositing mail in a mailbox, the legislature would have prescribed service by regular mail. Here, however, the requirement of personal service or service by certified mail negates such an interpretation of the statute. Therefore, I suggest that a more reasonable interpretation of the alternative methods of service permitted by section 514.08, subd. 1, is that the legislature wished to assure actual receipt of the mechanics' lien statement by the owner or his authorized agent within the 120 day time period. *See State of Cal. Dep't. of Forestry v. Terry,* 124 Cal.App.3d

140, 177 Cal.Rptr. 92 (1981) (where a timber lien statute required service by certified mail, the certified mail was returned undelivered, and the evidence did not show that addressee was purposely avoiding receipt of the certified mail, the court held that the requirement of service by registered or certified mail was not satisfied by mere mailing. The court determined that the legislature must have intended that the signed receipt from delivery of the certified mail be an integral part of the service).

Although the majority relies on *Goldsworthy v. State Department of Public Safety,* 268 N.W.2d 46 (Minn.1978) and *McIntee v. State, Department of Public Safety,* 279 N.W.2d 817 (Minn.1979) for their analysis that service under the statute has been accomplished, I am troubled by the fact that in both of those cases where certified mail was utilized and was deemed to be sufficient, the record reflected that the certified mail was actually delivered.[1] Here, the record discloses no evidence that service of a copy of the mechanics' lien statement was actually delivered to Gepner or his agent, within 120 days from February 21, 1984, the date when Har–Ned last furnished materials. The record reveals only that well after the 120–day period had lapsed, Gepner received a copy of the lien statement by regular mail dated August 9, 1984. I believe this circumstance to be of critical importance, and as a result I find the supreme court's comments in *McIntee* instructive:

In cases [from other jurisdictions] where the registered mail was not delivered and it was returned, the courts have been virtually unanimous in holding that the notice is insufficient.

* * * * * *

In accordance with these cases, the *service* of notice * * * *is insufficient if the certified mail was merely undelivered.* *McIntee,* 279 N.W.2d at 820 (emphasis added).

If the record before us demonstrated that service was actually delivered as it was in *Goldsworthy* and *McIntee,* the ser-

---

1. I, too, would recognize as sufficient service by certified mail, when the recipient refuses or neglects to accept delivery of that mail. There is no evidence of such refusal or neglect here.

vice here would be sufficient. However, it was not, and I would reverse the trial court's determination that upon mailing service was sufficient.